TOLERTON & STETSON COMPANY V. FIRST NATIONAL BANK OF WAYNE.

FILED JANUARY 22, 1902. No. 10,899.

Commissioner's opinion, Department No. 1.

1. **Successive Mortgages:** RECORDING: EVIDENCE. Where several successive mortgages have been given to secure the same in-debtedness, and only the last one has been recorded, several months after the making of the note, and credit meanwhile has been extended to the mortgagor, in a contest between the mortgagee and the creditor evidence is admissible as to all the transactions of the parties to the mortgage with regard to that indebtedness.

2. **Mortgage on Stock of Goods:** REPLEVIN. Where a mortgage has been taken upon a running stock of goods, expressly describ-ing them as "goods now in stock," a mortgagee who has seized the stock by replevin from mortgagor should be required to ac-count to the latter's garnishing creditor for all goods actually seized, and which were not in the stock when mortgaged.

ERROR from the district court for Wayne county. Tried below before ROBINSON, J. *Reversed.*

*A. A. Welch* and *J. A. Berry,* for plaintiff in error.

*Frank M. Northrop, contra.*

Argued orally by *Welch,* for plaintiff in error; by *Northrop, contra.*

HASTINGS, C.

Action against defendant, as garnishee, charging the defendant with holding possession by a fraudulent mortgage of a stock of goods of the judgment debtor, W. D. Hughes. Plaintiff recovered a judgment against Hughes of $611.06 in the district court of Wayne county. At the commencement of the action, August 4, 1897, it had procured a judgment, and garnished the defendant bank. The bank answered that it was in possession of the stock of merchandise belonging to Hughes, but held it by virtue of a chattel mortgage dated July 19, 1897, and filed for record July 29, 1897. The bank objected to answering questions relative to whether or not this mortgage was a renewal of the previous unrecorded mortgages held by it, and why it had failed to record promptly its mortgage of July 19th. The petition alleges that a large portion of the goods held by the defendant were not in fact owned or in the possession of Hughes when the mortgage was made, but were purchased by him subsequently to its making, and are in no way included in it, and that the mortgage was given to secure a note executed and dated October 1, 1896, by said Hughes in favor of defendant. It is also alleged that October 1, 1896, a similar mortgage was given upon all his stock by Hughes to defendant, under an agreement that it should not be recorded, unless Hughes should fall into financial embarrassments, but was to be kept off of the records in order to preserve Hughes's commercial credit; that the mortgage was renewed from time to time at intervals of about sixty days until the giving of the one of July 19, 1897; that plaintiff had no knowledge of the several chattel mortgages; that it supposed the stock was unincumbered, and was so induced to extend credit to Hughes, and during the time from October 1, 1896, until July 29, 1897, did sell and deliver to Hughes all of the goods on which its judgment of $611.06 was rendered; that no such credit would have been given had the mortgages been recorded. The issuance and return of an execution and the fact that Hughes

was insolvent, etc., are not denied. The value of the
stock of goods is alleged at $1,300. The refusal to answer
with reference to the preceding mortgages and the value
of the stock of goods, are denied by defendant. The state-
ment that a large quantity of goods were purchased after
the execution of the last mortgage, which were not covered
by it, is denied. The making of the several mortgages, and
their withholding from the record, and the statement that
if they had been recorded credit would not have been ex-
tended to Hughes, are also denied. The issues of fact
seem to be simply as to the value of the goods; the making
of the mortgage of October 1, 1896, and the various re-
newals, under which possession was taken; the agreement
not to record, and the fraudulent intention. The court in-
structed the jury that if they found there was an agree-
ment between Hughes and the bank to withhold the mort-
gage of July 19th from the records, unless some difficulty
should befall Hughes, and it was withheld in pursuance of
that agreement, they should find for plaintiff. The court
also instructed that mere delay in filing without intent to
defraud would not avoid the mortgage. The court in-
structed that if new merchandise of the same general char-
acter was added to and mingled with the stock in such a
way as not to be distinguishable by one not having per-
sonal knowledge of the goods, and no one had pointed them
out to the bank or its agents, the bank was entitled to retain
and sell them, and claim the proceeds, and plaintiff could
have no recovery on account of them. The court also in-
structed that if the goods subsequently purchased had not
been mixed with the stock, and could be distinguished by
the bank or its agents when it took possession, the plaintiff
could recover the value of such distinguishable goods. The
plaintiff asked an instruction that it was entitled to re-
cover the value of all the goods purchased by Hughes after
the giving of the mortgage, and of which possession had
been seized by the bank. This was refused. Plaintiff
asked also an instruction that it was not necessary that
the agreement to withhold the chattel mortgage from the

records be made at the time of its execution, but that it was sufficient if such agreement was made any time prior, and the mortgage was executed and delivered in pursuance of it. This was refused.

There was a direct conflict in the evidence as to whether an agreement not to record this mortgage of July 19th accompanied its execution. Hughes testified that such an agreement was made with Wilson, the bank's cashier, and the latter denied it. The court, consistently with its refusal of instruction, refused to allow Wilson to be inquired of as to any such agreement accompanying the former mortgages, and as to the previous understanding with regard to this one of July 19th. In this, as well as in its holding that the property and goods mingled with this stock subsequently to giving this mortgage passed to the bank as against creditors, there seems to have been error. It can scarcely have been a matter of importance as to the time of the understanding, if one was reached between these parties, that the mortgage was to be withheld from the records.

To disprove the $1,300 value alleged by plaintiff, evidence was introduced to show that the defendant only realized about $700 from the property. The description in the mortgage was as follows: "All the stock of general merchandise of every description, also all furniture and fixtures and fire proof safe, now contained in the store building standing on lot twelve in block thirteen town of Wayne. It being the intention of this mortgage to embrace therein all the property of every description belonging to said W. B. Hughes and contained in said store." It was to secure a note dated October 1, 1896, for $2,247.60. That any merchant could retain commercial credit with a chattel mortgage upon the county records drawn in these terms for practically double the value of his stock, is simply impossible. The possession of the goods was taken, by the defendant bank, under a writ of replevin. The only right or title it held, is by the terms of this mortgage. The mortgage expressly related to the goods contained in the store

on July 19th. Under the circumstances, it is clear that the mortgage contemplated a continuing of the business. The cashier of the bank testifies that he knew that the filing of the mortgage would prevent Hughes obtaining credit. If any rights were lost by reason of mingling goods under such circumstances, it would seem it should be those of the mortgagee rather than those of the garnishing creditor. The garnishee-summons in this case, was served on the defendant bank on the 4th day of August. The latter's possession by replevin upon its mortgage, was not earlier than July 30th. Under these circumstances, it would seem to be the duty of the defendant to account for all goods which are shown to have been added to that stock, after the taking of its mortgage, so far as it obtained possession of them.

The case of *Forrester v. Kearney Nat. Bank,* 49 Nebr., 655, is relied upon by defendant as sustaining the proposition that failing to record its mortgage would have no effect upon its lien, as against this subsequent attachment. Doubtless such would be the case, unless the delay is for such a time and accompanied by such circumstances as would taint the transaction with fraud. That case is expressly based upon the interpretation of our statute which the Ohio courts give it, and in the Ohio interpretation transactions which bore the taint of fraud were expressly excepted from the scope of the decision. *Wilson v. Leslie,* 20 Ohio, 161. *Forrester v. Bank* simply decides as to the effect of the recording statute, and is in no way in conflict with *Ackerman v. Ackerman,* 50 Nebr., 54, which says that withholding a mortgage from record on an express agreement that it should be recorded only in case of some difficulty of the mortgagor's affairs, of which he was to notify the mortgagee, sufficiently showed a fraudulent purpose such as to render the mortgage invalid. It would seem that in this case all of the transactions with reference to this indebtedness claimed by defendant should have been permitted to be shown; that the instruction, and those rulings which excluded from the consideration of the jury agree-

ments made prior to the execution of this mortgage, but in accordance with which it is claimed to have itself been made and delivered, were wrong; and that defendant should have been required to account, at all events, for so much of the goods which it seized by replevin under its mortgage as were not in the stock when the mortgage was made.

It is recommended that the judgment in this case be reversed, and the cause remanded for further proceedings.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.